Good morning, ladies and gentlemen. This is the time for argument in the re-hearing on bank of Diaz v. Parks. And we understand Council is ready and prepared to present their arguments. So I will call on Mr. Yagman. Good morning. My name is Stephen Yagman, and I represent the plaintiff. My plan is to argue for about a minute and a half and then take questions, if any, and then to reserve the rest of my time for rebuttal, if appropriate. This case should be decided unanimously by this panel based on the contents of the first opinion in Oscar, in which Judge Brunetti, who was the author of the panel opinion in this case, joined, based on Judge Kleinfeld's dissent from the first en banc, from the en banc decision in Oscar, in which Judge Brunetti joined, based on Judge Silverman's dissent to the panel opinion in this case, from the amended panel opinion in this case, and then based on the United States Supreme Court decision in Swierkiewicz v. Surima, the pleading case. This Court's en banc decision, written, I believe, by Chief Judge Schroeder in Miranda v. Solano County, another pleading case, based on the Clayton Act. This case involves basically two issues, I think. One, the pleading issue, which I think the plaintiff has met without any doubt at all. And second, the issue that could be characterized as a substantive issue, which probably is a standing issue, although I've never been able to convince myself that it is or isn't a standing issue. Employment under California law is both a business interest and a property interest, as is pointed out in the first Oscar decision. And the commercial, what I call the commercial target component of RICO that was imported into RICO by Judge Brunetti's decision simply has no basis in law at all. I have nothing more to say that isn't in the briefs other than that, and I will take questions if there are any and if not, I'll ---- Mr. Yagman, could you help me on something? I've been trying to think actually for some years now just why Congress put the phrase business or property in there. And one speculation I've had, since it's not really that clear from the statute or if we look at it from legislative history, is that they wanted to have a firm grip on the Commerce Clause. I have no idea in the world, other than they modeled it on the Clayton Act, just as I ---- I'm not sure why they did what they did over the weekend because they said so. But I don't know why they did that. They modeled it on the Clayton Act. The Clayton Act phrase. Pardon me? They copied the Clayton Act phrase, as you say. Which is why, in this case, the words business or property in the RICO statute ought to be interpreted the same way as they're interpreted in the Clayton Act. And that means that employment comes within the ambit of the predicates for civil RICO. But I'm sorry, I don't ---- I mean, I have no idea what Congress thinks, if anything. Is there something in point that says that your employment opportunities are your business under the Clayton Act? I believe there's a case under the Clayton Act that I've cited in one of my briefs that doesn't come to mind at the moment. But what does come to mind is Nancy Kerrigan's knees. And I wonder, and I think it's true, that if the folks who did that to her knees way back when had done it to somebody else, that there might have been a RICO case, because her knees are her employment. Did what to whom? I've never heard this question. Nancy Kerrigan was a young Olympic competitor. I didn't mean to dissect your question. Just tell us what happened. I'm not familiar with the facts. A competitor of hers, she was an ice skater, got some of her boyfriends and cronies to smack her in the knees, as they would say, you know, break your knees like the mafia did in the old days to try to ruin her chances for competing. I've forgotten, although I remembered last night who the evil person was who ---- Tanya Harding. Tanya Harding. Thank you, Judge Reinhardt. Another skater. Another skater who was shorter and weighed more. Tell me, Mr. Yagman, we do know from what the Supreme Court has said that there ---- that the phrase business or property is a restrictive phrase that's designed to exclude personal injury. Absolutely. No one's suing for personal injury in this case. They seem to fit right squarely into false arrest and false imprisonment. So why isn't it a personal injury case, although the damages are economic damages to employment prospects? I think that line of thinking commits a category mistake, and it confuses the RICO predicates. Explain it. That strikes me as the problem. It confuses RICO predicates. You've said false arrest. We say kidnap because there was no right to arrest. It confuses RICO predicates, I think, with damages. And I think one of the problems in the line of RICO cases is that the element of damages for personal injuries is always implanted on the standing and the pleading requirements. And I think that's wrong. Right now, this is a pleading case. But you would agree that if this case goes forward, the only relief you could get would be for economic damages. I'm forced to concede that, yes. I don't think there's any question about that, although somebody may be able to think of one who's smarter than I am. Can you tell me briefly, aside from the so-called standing issue, aside from the so-called standing issue, how your case comes within the causation provision? I don't mean approximate cause problem, but what are the – in what sense was it brought about by reason of a pattern of racketeering activity? Well, I don't think this is a causation case, but I shall answer the question. I'm talking about causation in, as I say, an approximate cause issue sense. But I want to know how the pattern, assuming there was a pattern, brought about the injury. Well, L.A. Cops, we allege, have been for a long time and continue to be a racketeering enterprise. They go around and do these same sorts of things all the time. I guess, specifically, does it matter that this guy was – there was only one predicate act that applied to him, presumably? That's all that's required. So is it sufficient that he – it is the pattern that caused him, it's simply one predicate act? I think, once again, one category of things, Enrico, is being imported into another category. Anything. I'm asking a question. It doesn't matter. I'm not sure I understand the question, but let me try to answer it. There needs to be a pattern. It doesn't need to be a pattern vis-à-vis one person at all. You show a pattern by proving other predicate acts over the ten previous years, and then that's the pattern. It doesn't have to be a pattern that's directed at this person. All that needs to happen is that one of the different kinds or sorts of predicate acts needs to be the act in this case. I don't know if that answers the question or not. I guess that's really my question, isn't it? Is that sufficient? The question I think Judge Kleinfeld was getting at was whether, when they talk about business or property injuries, as opposed to personal injuries, they're talking about the ultimate damage that you suffer or they're talking about the cause of action or the type of injury. Here, do we look to whether the type of injury was a personal injury in that someone was personally arrested and put in jail? Or do we look at the type of various types of damage he suffered and say, yes, you can recover for the business and property consequences of that personal injury? Which level do we look at when we're deciding whether it's a personal injury or a business or property injury? In this case and in the posture in which this case now is, I suspect that what one looks at is the kind of, for lack of a better word, tort that occurred. That is, was it negligence? Was it an automobile accident? The kind of tort is more like a personal injury. I respectfully disagree that the kind of tort was a personal injury. I think the business or property interest came from the fact that the arrest led to an interference with business or property and that he lost employment. But the tort wasn't the taking away his employment. The tort was arresting him and putting him in jail, or as you call it, kidnapping him. Kidnapping is more like a personal injury than a business or property tort. Not, I think, in the RICO context. I think in the RICO context it's not a personal injury. It's simply a RICO predicate. And then the question becomes, as a RICO predicate, are you suing for something that would come within the definition of a personal injury? And thinking it through as I reevaluate the question, I think it lands on both feet. I think it lands on both ends, that the underlying bad act, and as you say we call it kidnapping, is not a type of personal injury. But I realize that people can characterize it like that because they characterize it as a false arrest or as an intentional tort. But the harm here certainly is an injury to business or property. And thinking it through, I think I come down on the second footing of that as I'm thinking about it. But I think it's a difficult distinction to make. I think I would Well, you can have both personal injury damages or property damages or business damages resulting from an automobile accident. You could have the injury to the person, the injury to the car. You could be knocked out of employment for a while. But it would still be basically a personal injury if it resulted from the automobile accident. But then there would be economic harm, injury to business or property from So your answer then is that it doesn't matter what the basic injury is, you can still recover for the economic harm regardless of the type of tort. Yes, that is my answer. But I would add to that as well that I think it may make a difference, and this en banc panel will decide if it does make a difference perhaps, whether or not the underlying wrongful act is negligent or intentional. I've always understood personal injury in the context of torts to mean something that's negligent, like medical malpractice. I've never understood it to be an intentional tort. I don't consider an intentional tort to be personal injury, but somebody a lot smarter than me can decide the answer. Well, who knows more about torts? Of which I know between zero and nothing. What is the client's business? His employment. What is that? I can't remember what he was doing at the time. He was employed, and I don't remember exactly what he was doing. I know he wasn't a brain surgeon, but beyond that, I just don't know. He may have been a janitor. I don't think it makes any difference. It sounds from the complaint as though he was unemployed. Not the complaint that I wrote, but let me ---- It interfered in that. It interfered with his ability to obtain work. It says in Avermant 31 of the complaint, which is on page 16 of the excerpts of record, line Avermant 30 and 31, plaintiff were, typo, and I apologize, I'll sick myself on that, injured in their businesses and or property by reason of the conduct set forth in Avermant 31. Among other forms of injury, plaintiff lost employment. You have to have it to lose it, I think. Employment opportunities, et cetera. That's how the panel ---- Employment opportunities or lost employment? First, lost employment. Lost employment of the words, comma, lost employment opportunities, and the wages and other compensation associated with said business, employment, and opportunities in that plaintiff was rendered unable to pursue gainful employment. That, I think, is the main flaw, although there are many flaws with the panel opinion in this case. Panel opinion indicates that that isn't pled, but it is pled. Let me give you a hypothetical to test my understanding of your theory. Suppose you have a racketeering enterprise pattern, racketeering, all that is established, and their method is to ram people on the freeway. Is this to what? Ram people on the freeway with their cars. R.A.M. Yes. Ram. Ram, R.A.M. Car accidents. That is a traditional tort. It's assault and battery. Ordinarily, the way it would be pleaded would be you'd have an alternative theory of negligence, just in case you couldn't prove the intent. The damages would include pain and suffering, medical expenses, damage to the car, and damages to the, it would be wage loss or interference with the obtaining of profits or whatever consequential economic damages there were. If I understand your theory, that would be a good RICO claim, but the only damages that could be obtained in a RICO action would be three times the consequential economic damages, of the damage to the car and the loss of wages. Have I got that right? I seem to agree with that. I may think better of it when I make my better argument on the way home, but it seems right to me. But I feel like I'm conceding something that's bad for our case, although that's just a ---- I'm not really asking for a concession. I'm just trying to clear up my ideas. What you're saying there is you don't look at whether it's a traditional personal injury tort to decide if it's injury to business or property. You look to whether those are among the damages from the tort. I seem to agree with that, but I want to engraft on that the distinction that I made between intentional torts and negligent torts. I don't have the feeling that negligent torts, which I call traditional personal injury torts, fall within RICO. I may be wrong on that. That's not an issue in this case because we have an intentional tort here, but I do agree with the conclusion of your hypothetical. And, you know, I made a list. Can I follow up on that? Because I'm very interested in Judge Plainfield's question and your answer to it, so I want to make sure I understand it. So these folks, as Judge Plainfield posited, are in the business of creating accidents on the freeway. And the idea is that they pretend to have these accidents. They don't get injured very much, and then they phony up medicals and present them to insurance companies. In the meantime, people's cars get damaged in these accidents. So if I understand your answer to this conference question, you can change it now if you think better of it, just so I understand it. Let's say that one of the car owners, one of the people who was involved in this accident, brings a lawsuit and discovers everything that happened. This wasn't just a freak accident. This was their business, and their business was to manufacture accidents on the freeway, generate phony damages, and defraud insurance companies. And incidentally, they also damaged people's cars, because that's how they did it. So you represent one of the people that got rammed that way, that got injured by this scheme. And there is damage to the car. Obviously, the car is rammed, so it is mangled, it needs repair. There's damage to the occupant, and the occupant, because of these injuries, is unable to work and also has pain and suffering, you know, the normal things of being in the hospital. And eventually, let's say they recover and they go back to work. Which of those damages, if any, do you think are recoverable under RICO? All of the above. Because the car is property. I think it's a little bit different from what I heard you say to Judge Plaston, which is fine. I just want to make sure. So the car goes on? No, go ahead. I thought you answered me at the outset by saying that only the economic damages were recoverable. Yes, but the car is economic harm. I thought Judge Kuczynski also mentioned pain and suffering and other such things. I was going to go to it. I didn't hear that. The car is property because it's a piece of property. It's a thing, right? Yes. Judge Kuczynski was directing your attention, I think, to the word therefore in subsection C. You know, I didn't think I was – I didn't know I was doing it. I thought it was right. I'm sorry. Let's go over it. So the car is property because it's a piece of equipment. It's property. It's owned by somebody. And then the medical – the medical bills. So the person in the car is injured and has to go to the hospital and has medical bills, which are not covered by insurance. That would be covered? I don't think so because that's a personal – those are damages consequent to a personal injury. Okay. That's fine. I don't want to give up too much time with that. So the next thing they say, you know, they are suffering. You know, the injury is painful. It leaves them with permanent pain. They have to go undergo therapy. I mean, you know, it's a loss of consortium. That stuff is not covered? I don't think it is, but I think the loss of going to work is covered. Okay. I was getting to that. So that's not covered. And then the next thing is they lose work. And in your view, that's covered because that's property. And the property damage there is the property interest in your own work. Yes. So the middle two things are not covered. The medicals and the pain and suffering are not covered. The two outside things, the damage to the car and the damage to employment is covered. That seems to be my answer. That's your answer to – That seems to be my answer. I'd like to reserve some time, but before I – You're asking us to disagree with the Eleventh Circuit. You mean the Grogan case? Yes. Of course I am. And that case has nothing to do with this case at all. I mean, everybody's read it. You know, it involved the relatives of some FBI agents who were murdered by some people. I understand the difference. Counsel, before you sit down, why isn't this case barred by Heck v. Humphrey? Why is this a collateral attack on the conviction? Well, first of all, Heck v. Humphrey doesn't apply to RICO actions. I understand that, although there are a number of courts that have addressed this question and a number of courts have said that it does apply in RICO actions. Well, this Court's never said that. It doesn't. There's nothing in Heck v. Humphrey that says that. And moreover, Judge Scalia, who wrote Heck v. Humphrey in 1994, I believe, indicated that he wasn't going down the road of collateral estoppel, and he wasn't because conceptually to have done that would have destroyed his opinion. It would have become internally inconsistent. It just doesn't apply here, and that's one of the reasons that RICO claims – You could have filed a 1983 action here, right? No. You couldn't have filed a 1983 action? No. It would have been barred by Heck v. Humphrey. Okay, but you also would have been out of time. I don't remember. I don't know that. Okay. In your complaint, you have alleged that you've got false imprisonment, kidnapping, false arrest. All of those things are going to be challenges to the conviction of your client, who remains in jail and has exhausted his other remedies. Why isn't this a collateral attack on his sentence and his conviction? Because there's no predicate for it because it's not going to happen. It couldn't be. But you can only recover if you can show that the police falsely arrested your client. I believe so. And you can only show that the kidnapping is the result of the arrest. So to recover here would require that the court or the jury find that your client should not be in jail. Isn't that right? The majority of this panel finds that Heck v. Humphrey used to be implanted onto this case. There's nothing I can do about it. It just doesn't fit. It was limited to its own facts. It's limited to Section 98. But I do want to clarify. My last question was, in order for your client to recover, a jury would have to conclude that your client is not lawfully in jail. Isn't that correct? No, it's not. How is that not right? I'd really like to reserve. I've only got seven minutes left. I think you better answer the question. I don't think Heck v. Humphrey is applicable here because I don't believe that a judgment in favor of the plaintiff in this case would operate and fit within the framework of collateral estoppel so as it could be used in any way. Just tell me why a jury wouldn't have to conclude in order to favor your client here for damages, that your client was not in jail unlawfully.  I should have thought of it sooner. You can't reason backwards from a conviction to the fact that there was probable cause for or that an arrest was lawful. You just can't do it. There are cases I know of. I haven't cited them because I didn't think this issue was going to come up. You'd have to reason backwards to do that. We're basing this on the original kidnapping, not on the conviction. And you have many cases, and I think there are some in the Ninth Circuit, that stand for the proposition that you can still have a Section 1983 claim based on the event of the arrest, even though there's a conviction after that, and you'd have to find complete symmetry and congruence between all of the facts for the arrest on the one hand and all of the facts for the conviction on the other hand for Heck v. Humphrey ever to apply as a bar. Thank you. Good morning, Your Honors. Janet Bogigin on behalf of Defendant Bernard Parks, who is the only served defendant in this lawsuit despite the numerous named defendants. Excuse me. Mr. Yakman and I got to the courthouse kind of early, and we were chatting about what we were going to do when we retire. We were dreaming. And I said, you know, I'd like to be a gardener. I'd like to do something completely different. And I'd like to start by offering a gardening analogy. You do not use a lawnmower to trim hedges. You use hedge trimmers to trim hedges. You use the tool that is best designed to remedy the problem. You do not bring a RICO lawsuit to remedy alleged civil rights violation. Congress has given us a very specific statute for that very purpose. It's called 1983. And I know that Mr. Yakman is extremely familiar with that statute. I don't understand that to be the general approach to law that we take. I see prosecutors all the time using sweeping statutes. When there are narrow, specific ones, you can frequently prosecute somebody under any number of statutes, although there may be a specific one aimed at the offense. And I don't hear the government coming in and saying, well, we're required to use the narrowest possible one when we have a number of tools available. That would be the case if the statute that he's bringing this lawsuit under fit. It does not fit. That's a different issue. But, I mean, if, for example, you had a situation in which you had a bunch of racist policemen who were purposely going after African-American people and putting them in prison specifically because they had good jobs and they didn't want them to have good jobs. Why? In other words, if you can come up with a set of facts which could be a 1983 violation but also could be a RICO violation. I'm not saying it's not possible. I'm saying under the facts of this case as pled. It's not a helpful way into the case, I don't think, despite the gardening analogy, because ultimately what we have to figure out is just the. Right. And what you really need to look at is what is the nature of the injury alleged. The complaint in this case is a basic boilerplate complaint that Mr. Yagman frequently uses in 1983 litigation. Toward the end of the complaint, he's added some language that's a little bit more specific to try to bring it within RICO because he's only sued under RICO in this case, which is unusual for him. When you look at the paragraphs that address RICO specifically, they're paragraphs 17, 31, 32 of the complaint, look at the nature of the injury alleged. He suffered a false conviction. He was unlawfully incarcerated. He had suffered unjust charges, unjustly incarcerated, unjust and unconstitutional convictions. Counsel, help me with that. Here's my problem with your argument. I read 1964C, and I'm trying to fit it into the kind of personal injury toward or business toward category distinction that Grogan sets up. Right. And I'm having trouble doing it. And let me explain why. Okay. It says, Any person injured in his business or property by reason of a violation of Section 1962 of this chapter may sue therefore. So it looks to me like it doesn't say by reason of a personal injury type toward or by reason of a business type toward. It says by reason of a violation of Section 1962. So if I find the 1962 violation, I've got my type of tort. And then what it has is a restriction on what you can sue for if you're a victim of that type of wrong. What you can sue for because of the word therefore is injury to your business or property. So it looks to me like if you take my freeway ramming example, and Judge Kaczynski was right. What brought it to mind was that scandal in California about the insurance fraud. If you take that freeway ramming example, it looks as though it doesn't really matter whether that's a typical PI case when there's a car accident or whether it's a business tort. What matters is whether there's injury to business or property. And you can only sue for that. So these people can't sue for their personal injuries, their pain and suffering, their medical expenses, but they can sue for their consequential business or property damages. And they can get three times the automobile collision damage and three times their wage loss and three times their business loss if, say, they're a lawyer and they lose their hourly billings for a month. It looks as though that's a literal reading of subsection C. What am I missing here? Look at the Ryder v. Sonotone decision of the U.S. Supreme Court. And they're talking about the Clayton Antitrust Act, and we all know the connection between the Clayton and the RICO Act. Yeah. Ryder says that the words in his business or property are restrictive. So I read it restrictively. It restricts the damages. When you sue for personal injury, the big money is in the medical expenses and pain and suffering. Usually the wage loss and the car damage are, while sometimes the wage loss is big, the car damage is always small. It is restrictive. Well, and they go on to say Congress must have intended to exclude the class of injuries by the phrase business property. They must have meant to exclude the personal injury class of injuries. I think it is wrong. I think Grogan is absolutely right. I think it is wrong to look very myopically at the type of damages. Can you argue? Why is Grogan right? I mean, adverbs, to me, don't make an argument. They just tell me how you feel about an argument. You think it's myopic. I don't know if it's myopic or not. Why isn't Grogan wrong when it says if you sue for wrongful death under Lord Campbell's Act, the only ‑‑ I don't know if it mentioned Lord Campbell's Act, but it's obviously what informed their discussion. All you get is economic damages. You don't get damages for the horror of the death and the grief and the pain and suffering and all this stuff under Lord Campbell's Act. You just get the economic consequences to the survivors. And they say, well, even so. And I don't know why that follows. Let me point to a little guidance we have from Congress. There's a congressional note at the end of 1964. And it says no provision of RICO, quote, shall supersede any provision of Federal, State, or other laws imposing criminal penalties or affording civil remedies. That's exactly what would happen in this case if you allow what's a 1983 lawsuit to be pled as a RICO lawsuit just because somebody can hypothetically articulate a potential speculative economic injury resulting from civil rights violations. Well, let's get specific. Following up on the trifle hypothetical, let's take the four kinds of damages. Okay? You've got the scheme out there. They rammed the car. And the person rammed, who isn't really the target of this? That's basically a means to generate these claims against an insurance company. Catch on that this is a scheme. And they sue for four things. They sue for damage to the car. They sue for the medicals. They sue for pain and suffering. They sue for loss of work. Okay? Damage to the car. Is that a RICO kind of damage? In isolation, it's property damage. Now, I don't know what an isolation means. If you're just looking at damages. If you're not taking the whole picture, you're not looking at the predicate act, you're not looking at the causation, you're not looking at leading to damages. If you're just looking at damages. Well, that's the only way we can talk about this. If you want us to change all the variables, then we're not going to get any answer at all. I'd like you to. Assume everything else is fine on the RICO, okay? Is the damage to the car property? I think so. I feel like Mr. Yagman, I don't want to concede anything, but it certainly seems so. Well, this is your job here. I know. You have to concede these things. If you don't want to concede, then we're not going to go forward. Okay. So tell me, is it or isn't it? Damage to a car, certainly property damage. Okay. So the car gets damaged as a result of the scheme. You know, there's a big enterprise out there to generate, you know, and you lose your car. Medical costs, we don't even have to talk about because Mr. Yagman has said that that's not, and your pain and suffering is not. So now what you've got is the guy inside of the wheel happens to be a lawyer, okay? And he is a sole, he's got a, what do you call those? Sole practitioner? Huh? Sole practitioner? Yeah, yeah, but I want to say. LLP. You know one of these. LLP. LLP. Thank you. And he is the only asset. The way, if he doesn't work, the clients don't get served, he doesn't get billable hours in, and the business goes down the tube. Okay. So it turns out because he is in the hospital for three weeks, he can't bill. And let's say he bills $200 an hour, some amount. And as a consequence of that, a lot of clients leave because they need a lawyer to service, and they don't come back. Now is that damage compensable under RICO? Does it qualify under the injury to business or property under RICO is the question? Yes. I'm hesitant to answer the question only because we're just looking at the damages. Let me make it absolutely clear. You don't have to answer any question I ask. But the consequence of not answering is that I will be left in doubt. So if you want to help your client, he will try to answer the question. Okay. If you choose not to, you're not going to be held to contempt, you know, and I've got to send my marshals after you. So it's your choice. Do you wish to answer the question? Sure, I'll answer the question. Okay, good. Please. I'd like to hear what you have to say. Is loss of wages ever conceivably injury? No, that's not my question. My question is, as I have stated it, the guy can't work his business, which is a law firm, something you probably know something about much more than I do. Yeah, I work for the government. I've never been a partner in a law firm, so I have no idea. So, anyway, but, you know, the rent comes due. He can't pay the rent. The landlord is after him. The clients leave. He misses court appearances. You know, the usual things that happen when you're in the hospital and can't do your job as a lawyer. As a result of the personal injury. As a result of this injury. Okay, so he comes in, and when it all recovers, he hires his own lawyer, and he brings a lawsuit on the vehicle, damage to the car, which you've conceded, and now he says, look, my business, my law firm, my livelihood, my living is gone because I lost clients, I got kicked out of my rental space, my secretary left, you know, all those things. I think all of those are residual economic consequences of the basic personal injury. I think that's exactly what Grogan is talking about. But there's another strain. I'm sorry, did you answer no? No, I don't think so. Do you want to tell me why? I think that those are. Neither is the damage to the car. That's a direct property. I know, but it's just your answer. The reason you say this is not is that it's a result of a personal injury. Well, that's true with the car also. You may be right, but at least your answer's not consistent. Either you're saying that the consequential damages of a personal injury are not covered because nothing that flows from the personal injury is covered or. . . They ran the car. But the predicate act, if I understand it in the hypothetical, is the scheme to defraud insurance companies. The predicate act is aimed at damaging the property, damaging the car. That's the target of the predicate act. It is aimed at phoning up medical so that people in the other car pretend to be injured in this accident, but they skillfully make it so that they don't suffer any actual injuries, and then they go to chiropractors or to fake, phony health care professionals who generate huge bills saying this person is injured and needs therapy and whatnot, and then they present them to insurance companies. That's the scheme. You create this phony accident which, in fact, winds up injuring and causing damage to unrelated parties that have the bad luck of being there, but the whole point is not to damage them. The point is to generate. . . The plaintiff. The plaintiff is the guy in the car. It's not the insurance company. It's the guy whose car got rammed. Your view is that if none of that is including the injury to the car is not, is not, is not legal? Yeah. I think the more I think about it, yeah. Yeah. As we look for Federal. . . Go ahead. Isn't there another strain of limitation here which really you're avoiding, but which would take care of a lot of what's bothering you about the hypotheticals, and that's the proximate cause? Oh, absolutely. Okay. So that might cut this off at the injury to the car and leave off the lawyer's business. But here we're really at the point of the injury to the car. In other words, whatever happened here, when the person was put in prison, he wasn't able to work. So it's, it seems that the proximate cause strain on limitation to RICO recoveries isn't applicable here. Do you disagree with that? I'm sorry. Do you think there's a proximate cause problem in this case? Oh, sure. Why? Well, first of all, you know, if we could go back to how the case is pled, I definitely disagree with Mr. Yagman that he's pled any actual loss of employment. It's certainly not beneficial to anybody's career to be arrested and put in jail, with the possible exception of Martha Stewart. It's not a good thing. But the facts of this case are, and you have taken judicial notice, we're talking about a man who was validly convicted. The conviction's been affirmed by the court of appeal. We're dealing with a complaint here. We're not dealing with anything else. Is that correct? Well, actually, if you read the complaint, I don't know if it's in the complaint, but I know that Mr. Yagman conceded that his client is still in jail. He does not contest that the conviction is still a valid conviction. So where's the connection between the predicate act and the injury in this case? Because right now what we have is a complaint. And the complaint says that they essentially, they kidnapped me and put me in jail and I therefore couldn't work. Now, let's suppose that we have something like we had a mafia scheme to do this. We're going to get rid of our competitors by planting false evidence and getting them arrested and put in prison. Would that be a compensable injury? Yes, under 1983. Why not under 1962? Under RICO, because if you look at the nature of the injury, it's essentially a personal injury allegation, whether you're calling it kidnap or false arrest or false imprisonment. The U.S. Supreme Court tells us the statute has kidnapping and murder as a predicate act. So what are the instances in which murder or kidnapping would constitute a basis for liability if that isn't an example of it? You know, I thought about that question, and it's a difficult question, but the best I can come up with is if, for example, you murder somebody and you steal all their property. That's the property damage. Counsel, I have trouble with that. When I go back to the statute, what Judge Berzon said was the same question that troubled me. It says that the cause of the injury to business or property has to be a violation of Section 1962. And then I look at Section 1962, and it tells me that the violation is conduct of an enterprise's affairs through a pattern of racketeering activity. And then I look at the definition section of racketeering activity, 1961-1, and the first one on the list is murder. Now, that is quintessentially a personal injury. It's not a business tort. So it looks to me as though if I've got an enterprise that conducts its business by murder, and there have been such enterprises, after all, one of them was called Murder, Inc. It means that under subsection 1964C, the victims can get damages trebled for injury to business or property on account of the murder. So how can I reconcile that literal working through of the statute with your argument to exclude personal injuries as Grogan does? Grogan deals with it by saying they can think of hypothetical situations where there is property damage as a result of the murder. They don't articulate what they are. They don't really give me a reason why they're right. They don't really work through the statute and explain why they're right. I think you have to put the statute in context and what was the purpose of the RICO statute. And you're dealing with business situations. You're dealing with mafia situations. If there is a scheme to murder, you know, the president of the company, to put the company out of business, I think that's. Look, from the title of the statute, I think they were thinking of old black-and-white movies. But from the words of the statute, it's plainly broader, and the Supreme Court has said it's much broader than its main focus in national organization for women versus Scheidler. They sure weren't thinking about the abortion dispute, but it nevertheless applies to it. And in now, and in all of the cases, all of the RICO cases I've read, you're talking about a business that is harmed by the predicate act. It doesn't have to be economically motivated, but the tool you use is an economic tool. You go after the business. Murdering somebody to put the business. I'm sorry? The example you just gave was murdering somebody to put the business out of business. Putting Marcia Stewart in jail to put her business out of business wouldn't count? It would have to on your theory. I think it's possible in her situation. She's an established businesswoman. If you could show the predicate act, if you could show the intent to target the business. What I'm having a very hard time with is you seem to be shifting ground all the time about what your theory is. Is your theory that employment isn't business? That seems to be what you're saying now. Is your theory that it has to be that personal injury in general doesn't count? Is your theory that this isn't tangible enough? Is your theory that it's not proximate cause? What – which of any of those is your theory? A lot of those, actually. I'll hedge my bets here. Now, in all seriousness, I mean, we haven't talked very much about the speculative nature of the allegation here. But it's all about loss of ability to obtain employment. There is no solid allegation here. I was employed and I lost my job. The complaint, as I read it, alleged lost employment, comma, employment opportunities and wages. So the first two words, lost employment, why wouldn't that be a sufficient allegation of a loss of employment? Because there's a phrase later in there that qualifies it all. You lost your employment, your employment opportunities and the wages associated with that opportunities in that he was unable to pursue gainful employment. Okay. So that's how the three-judge panel interpreted it. And I think they were absolutely right. Before Judge – It's still in the position that even if, like Judge Gould said, lost employment, if that – say if the others hadn't followed and it was lost employment and you gave – you know, you consider it's a 12D6 and the plaintiff gets everything in his favor at this point, you're saying that lost employment without being limited as meaning loss of employment opportunities would not be good enough? I'm not going to say it could never be good enough. It cannot be good enough under the facts of this complaint. You can't – But the fact that it's lost employment that's incidental to a personal injury is not – Exactly. Exactly. Is not an injury to a business. Would you have to make – Counsel, may I just – as we look at that question, though, isn't the better Federal analogy the tax code and how it deals with these things? Because Congress has required two things in terms of analyzing the deductibility for awards for personal injury. They require the tort. There has to be a personal injury tort, which is the Predicate Act. They don't say – but then they also have to look at the damage. And in looking at the damage, they separate out quite clearly the personal injury kinds of damages, medical, so forth, but they count the injuries pled in this case – we're talking about loss of wages, loss of employment – as economic damages. Isn't that a better way to look at the damage, to handle it consistently with the way that Congress and the courts have analyzed personal injury damages in the past? What you're asking, I think, is for us to take a completely different view of how we view personal injury damages. Because what Congress has said, sure, you've got to show the Predicate Acts in that case that it's a personal injury suit. But we also look at damages differently, and they exclude those items that Mr. Yagman said he was excluding. The rest, they're economic damages because they're more contract-like than tort-like. I really – I think the better way you have to look at it is in the specific context of 1983 in RICO, because he is raising civil rights violations undeniably. But you're confusing, I think, the Predicate Acts and the damage. No, I think they're connected. I don't think you can separate them. I guess I'm not articulating it well, but I don't think you can. Sure, but they're separate arguments. And what we're trying to say is if you assume the Predicate Act, pleading is sufficient, okay, assuming that that's sufficient, and I know you don't want to, but assuming that's sufficient, when we get to the damage side, aren't these loss of employment opportunities, loss of wages, loss of employment, isn't that quintessentially the contract type of damages that under the tax code, under the case law, are not considered personal injury damages? Assuming the Predicate Act is there, we're not talking about the facts of this case, the allegations in this case. The loss of employment opportunities, no, I think is way too speculative. I think that's absolutely contrary to the ---- Why is it speculative? I don't understand. Because you haven't actually incurred any financial loss. But this is a pleading state. I'm sorry? What if it's a loss of an actual job? If you're talking about you actually have employment and you lost wages, yes, I think conceivably. Okay. I'm not saying that loss of wages can never qualify as an injury to business or property in the abstract. Let's get back to the Kleinfeld-Kaczynski hypothetical. Do we have to? Well, excuse me? I'm sorry. Go ahead. The same circumstances, the same accident, the same damages. But this time it's not a scheme to defraud insurance companies. Somebody is out there who's got the service. If you want to win your lawsuits, we take out lawyers. We find if you have been in a lawsuit locked in with let's say a famous civil rights lawyer and he's on his way to court, we will get him on the freeway, knock his car off the road, he'll miss his court date and his case will get dismissed. And that's the business. The business is taking out lawyers. Okay? So this is not an accident that happens to be a lawyer in the car. And what's more is women are not injured so good that not only will he lose the case that's now we are worried about, but he will lose lots of other clients. Okay. And same plaintiff, same Kleinfeld damages. He claims two things. He claims my car was damaged and all the stuff inside. Second of all, my business was damaged, was injured because I could not work. I couldn't go to court. My client's case got dismissed. I didn't get my contingency fee. I didn't get other clients left. Okay. And your answer here is? Let me just be clear. So the defendant's whole purpose is to take out lawyers and prevent them from working. That's the scheme, yeah. Then I don't have a problem. The business relationship is the very target of I'm not saying this and I'm Marcia Stewart in prison. The hypothetical is exactly the same. So at that point, what is your problem? Your problem is that this person is not a business person? Or that it wasn't their purpose? Those are the two possibilities. One possibility is because it's a job, not a business, which you would consider not a business. Or that the purpose wasn't to have them lose their job. It was to put them in jail for a crime. The problem is that the police conduct had nothing to do with the business or employment relationship. Now it's the motive that's the difference. Well, I don't understand this at all. I'm now totally confused. I thought the operative words of the statute were injured in his business or property. And I thought you started out by saying that somebody who has lost a job that they got by looking at the want ads section has not been injured in business or property because the job is not a business and it's not a property. No, I'm not saying it could never be. I'm saying under the facts of this case with the predicate acts that are alleged, the personal injury acts that are alleged, you don't bootstrap in RICO by saying, and I can articulate some possible economic damage in that he might have had a job if he wasn't in jail. You don't go there and bootstrap it into RICO. Okay. Well, let me add one thing to the Kaczynski-Klantel hypothetical. It's a scheme against lawyers. Okay. And two lawyers are damaged, both of whom are arguing in front of us today. One is in a business, a for-profit business, and one is employed by the State in a salary. Mm-hmm. You both have lost your jobs or money. Is it your position that Mr. Yagman recovers and you do not because of the type of injury? In other words, your employment, your loss is to employment and you are not in a business in the traditional sense. No, I'm not making that distinction. So your whole argument gets back to the Predicate Act. Is this it? Well, it is. You're not making any difference on the – you're not making any distinction on the type of damage. Isn't your whole argument based on the causation, as the district court said, that this was not a RICO claim because the economic loss was caused by the personal injury directly, not by the false arrest and imprisonment? So this is really a question of how direct is the causation in this lawsuit. And I think the problem with your argument is that you have been shifting from each one of the elements, and so you haven't really answered that question. And now your time is almost up. I apologize, Your Honor, but my position has always been, and I hope consistently in the briefs and so forth, you're talking about personal injury violations. The fact that you can articulate – your characterization of this case, which the district court bought, is that the personal injury directly caused the economic loss, not the predicate acts that were alleged under RICO, i.e., the kidnapping or false arrest. The kidnapping or false arrest are the personal injury allegations, and they are the predicates. Well, you've more than used your time, so I think that will have to conclude. Thank you, Your Honor. I had a question put to me, to which I didn't know the answer, with respect to which the answer would have been anecdotal anyway. But the answer is the following. The plaintiff was an artist who worked for a company in Downey, California, who had a contract with Disney. And what he did as an artist was he put in shading on a piece of paper, He had a second job working for his grandfather who had Parkinson's disease and who delivered CO2 containers, and he did the deliveries for his grandfather. None of that is in the record, nor should it be. Taking Judge Kleinfeld's hypothetical, I think that the fellow in charge of Murder, Inc. – I think his name was Buckhalter, but I may be wrong. I think it was Louis Buckhalter, actually. He would be liable under RICO if RICO was around when he was doing the stuff he was doing in the 30s and 40s. Does it matter at all? As I understand it, you allege false arrest, but the district judge said the reason why you otherwise made out a 1962 C claim was because under California law, false arrest would be kidnapped. Kidnapping is a predicate act. Well, RICO predicates are divided into two categories, as I understand it. There are specific identified predicate crimes, and then there are generic state crimes. My recollection is, and I don't have the statute in front of me as I came up here, I think kidnapping is one of the enumerated Federal predicates. I may be wrong, but it's certainly a predicate. Was there ever an issue below? Did the city ever challenge whether you had sufficiently alleged a predicate act? I don't think they did. Yeah, I don't think they did. I don't think that's the posture we have here. I actually was going someplace else with that. So does it matter that if you had a false arrest, i.e., or a false imprisonment, if somebody's in prison, then the not being able to work follows directly. But it doesn't follow so directly from kidnapping. No, it doesn't. And so does that matter at all in terms of the degree of causation or directness that we have here? I don't think it does matter. And I also think that the Now case is instructive because on remand, when it finally came back to the district court, I guess for the Southern District of Illinois and Chicago, the employees were held to have standing, even though the predicate act had been directed at the business. When you deliberate this case, I ask you to think about, in addition to Nancy Kerrigan's knee and what Tanya Harden had done to her knee, what would the case have been if somebody had broken Fred Astaire's legs, Al Auder's right arm, Billy Graham's vocal cords, Vincent Van Gogh's right hand, or Rudolf Nuryev's legs? Would that be a RICO claim? And I believe that it would under the circumstances of this case. Unless there are any other questions, I'll give up the two minutes and 41 seconds I have left. Thank you. Thank you. The matter discharging the constitution is the argument in the case. The court takes the case. All rise. The score for the session stands 3-1. Thank you.
judges: En Banc Court